# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ZELZETA SIMMONS, } | |
| Plaintiff, } | |
| v. } | Case No.: 2:11-CV-2618-RDP |
| MICHAEL J. ASTRUE, } COMMISSIONER OF } SOCIAL SECURITY, } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Zelzeta Simmons brings this action pursuant to Title II of Section 205(g) and Title VXI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. *See also*, 42 U.S.C. § 405(g), 1383(c)(3). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.   Proceedings Below**

Plaintiff filed her applications for disability, DIB, and SSI benefits on October 2, 2007, in which she alleged that her disability began on June 25, 2005. (R. 55-56, 96, 100)[1]. Plaintiff's applications were denied by the Social Security Administration on January 4, 2008. (R. 55-68).

---

[1] The ALJ found that Plaintiff protectively filed an application for a period of disability, and disability insurance benefits on February 12, 2007. (R. 13, 116).

Plaintiff then requested and received a hearing before Administrative Law Judge Michael L. Brownfield ("ALJ") on September 10, 2009. (R. 33-54, 71-84). In his decision, dated December 22, 2009, the ALJ determined that Plaintiff had not been under a disability within the meaning of §§ 216(i), 223(d) and 1614(a)(3)(A) of the Act from June 25, 2005 through December 22, 2009, the date of his decision. (R. 13-21). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the Commissioner's final decision, and thereafter a proper subject of this court's review. (R. 1).

Plaintiff was forty-six years old on the date of the ALJ hearing and has a high school education and a certificate from junior college. (R. 38, 41). She initially alleged that she has been disabled since June 25, 2005—the last day she worked at her job as a distribution clerk at the U.S. Postal Service—because she was injured on the job and discharged as part of her worker's compensation settlement. (R. 42-43, 115). She claimed disability from arthritis and carpal tunnel syndrome. (R. 121). The following events preceded her worker's compensation settlement.

Plaintiff has medical records from treating and examining physicians during her alleged period of disability. (R. 164-74, 176-78, 183-201, 202-03, 205-07, 217-20, 224-35, 237-42, 244-52, 257-68). Records dated June 25, 2002, from Plaintiff's earlier treating neurologist Dr. John Brockington, found that Plaintiff "has confirmed carpal tunnel syndrome as well as cervical spine disc herniation at C5/C6 and thoracic spine disc herniation at T2/T3." (R. 174). He mentioned she had returned to work but was unable to perform her duties for little more than an hour due to exacerbation of her right arm and forearm pain; he concluded, "Because of this, I do not think it is going to be possible for her to perform her job duties." (*Id.*). A follow up visit on August 12, 2002, indicated that Plaintiff had shown improvements and was given the okay to work again with a

restricted regimen. (R. 173). One week later, she returned to Dr. Brockington and mentioned that even with restricted work, her right arm was in pain. (R. 172). He referred her to the Rheumatology Clinic for an opinion, and gave the following lengthy impression:

> Carpal tunnel syndrome, cervical and thoracic radiculopathies with the patient unable to continue with her current work regimen despite compliance with her medications and work restrictions because of increasing right arm. I think that there is very little chance that she will be able to perform any kind of work with her arms or hands, and I have written her a note to this effect today for her to provide for her employer. I think that she will need to be off work on a permanent basis because of this.

(*Id.*).

A November 1, 2002 visit to Dr. Brockington recorded that both an MRI and ultrasound of Plaintiff's right upper extremity were unremarkable, and a physical examination found that her head, neck and cervical rotation were normal, and that her wrists have some limitation and tenderness. (R. 169). During a January 29, 2003 follow up visit, Plaintiff indicated she wanted to again return to work and Dr. Brockington recommended "light duty" at her job. (R. 168). On June 16, 2003, he wrote that Plaintiff tried to work but feels pain and determined that "I do not think that she will be able to work." (R. 167). On a December 4, 2003 follow up, Dr. Brockington mentioned neck, arm and hand pain due to carpal tunnel syndrome, cervical radiculopathy, and rheumatoid arthritis. (R. 164). In this record Plaintiff stated that her pain is centered in her right wrist; she is taking Mobic and Methotrexate for her arthritis; and has a 8/10 pain level on a pain scale. Dr. Brockington's impression was that Plaintiff's hand pain and chronic neck pain render her "unable to work on a permanent basis." (*Id.*).

Plaintiff does not have any medical records after December 2003 until January 7, 2005, which is the last record from Dr. Brockington. (R. 202). Of note, Plaintiff reported that she has been doing better overall, but not working; does household chores, but if she exceeds her limits then she experiences pain the next day; her range of motion is decreased in her cervical spine and hand grips, and wrist extensors and flexors, but she has stable carpal tunnel syndrome, cervical radiculopathy, and rheumatoid arthritis. (*Id.*). Plaintiff's next records come from Dr. Walter Winn Chatham, a treating physician from the UAB Rheumatology Clinic, and include reports in 2005 from February 8, May 17, and August 5, and February 21, 2006. (R. 183-87, 191-201). These records include test results, a direction that Plaintiff should continue her medications, and mostly stable rheumatoid arthritis. (*Id.*). Her August 5, 2005 and February 21, 2006 visits both listed a 5/10 pain scale report. A patient questionnaire answered by Plaintiff at the February 21, 2006 visit showed that she could then perform a wide range of activities without any difficulty, and had normal and full ranges of motion in the upper extremities, head and neck. (R. 183-97, 184).

MRI results from Newton & James Neurology on May 31, 2005, indicate a prior surgical fusion at C4-C7 as the possible reason for Plaintiff's neck and back pain. (R. 203). On June 4, 2005, Plaintiff visited the ER complaining of cervical neck pain. (R. 190). Two days later, she had a telephone consultation with who appears to be Dr. Chatham, complaining of extreme pain. (R. 189). Another telephone consultation on June 13, 2005 was for prescription refills. (Tr. 188).

Plaintiff visited Dr. Gregory James at Newton & James on August 29, 2005, who reported that Dr. Brockington had apparently discharged her as a patient. (R. 177). She told Dr. James that she had returned to work at the Postal Service in June 2005, but they put her back in her old position and she was unable to perform it. (*Id.*). Dr. James had the impression that Plaintiff had cervical

radiculopathy and bilateral carpal tunnel syndrome, and found it appropriate that she was applying for reasonable job accommodations. (R. 178). On January 30, 2006, Plaintiff again visited Dr. James. (R. 176). She stated to Dr. James that she was still dealing with workman's comp and retirement issues from the postal service. He again diagnosed bilateral carpal tunnel syndrome and cervical radiculopathy and was of the opinion that Plaintiff was able to work:

> I think there is still a possibility of her returning for employment [at the postal service] with reasonable accommodation, but obviously there are some complex issues at play here. She now does not appear to be getting any income from anywhere, and I told her that if she is unable to return to work at the postal service, she may just need to find another job since this has been going on for so long.

(*Id.*).

Through the first half of 2006, Plaintiff attended UAB's Kirklin Pain Center, received MRIs and a consultation from an orthopaedic surgeon, with final impressions of rheumatoid arthritis and myofascial pain syndrome. (R. 217-20, 244-52). She was also continued with methotrexate and occasional trigger point injections in her shoulder. (*Id.*). Plaintiff underwent a DDS examination on December 5, 2007. (R. 207). Plaintiff began attending Cooper Green Hospital in 2009 and was diagnosed with rheumatoid arthritis, degenerative disc disease, and carpal tunnel syndrome. (R. 224-35).

**II.     ALJ Decision**

For a claimant to be determined disabled as defined under the Act, the claimant must have "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and which "makes you unable

to do your past relevant work . . . or any other substantial gainful work that exists in the national economy." 20 C.F.R. §§ 404.1505(a), 416.905(a). A physical or mental impairment is defined as an impairment that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908.

Social Security regulations provide a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). First, the ALJ must determine if the claimant is doing substantial gainful activity; if so, a finding of non-disability is made and the inquiry ends. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work involving significant and productive physical or mental duties, and is done or intended for pay or profit. 20 C.F.R. §§ 404.1510, 416.972(a)-(b). If the claimant is not engaged in substantial gainful activity, the evaluation proceeds.

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). Severe is defined under Social Security regulations as requiring that the individual have a medically determinable impairment, or combination of impairments, that is not merely a slight abnormality that would have no more than a minimal effect on an individual's ability to work; that is, it significantly limits an individual's ability to do basic work activities. *Id.*; *see also* 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling ("SSR") 85-28[2]. If the claimant does not suffer from a severe impairment or combination of impairments, then the inquiry ends.

---

[2]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR85-28-di-01.html.

Third, the ALJ considers the medical severity of the claimant's impairment or combination of impairments and compares them to those in the listing of impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing, the claimant may be declared disabled. *Id.* Otherwise, the inquiry proceeds.

Step four requires the ALJ to determine the claimant's residual functional capacity ("RFC") based on the individual's relevant medical and other evidence in the record, and assess whether the claimant can do past relevant work based on the RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). All impairments, including non-severe impairments, are also considered in finding the RFC. *Id.*; *see also* C.F.R. §§ 404.1545, 416.945; SSR 96-8p[3]. If the claimant can do past relevant work, then a finding of not disabled is made. 20 C.F.R. §§ 404.1520(f), 416.920(f). However, if the claimant cannot do past relevant work, then the Commissioner must show, at step five, that there is other work in the national economy the claimant can perform based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can do no other work, then he or she is disabled; if a finding to the contrary is made, the claimant will be found not disabled. *Id.*

In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 25, 2005, and has the severe impairments of residuals from carpal tunnel syndrome, rheumatoid arthritis, degenerative disc disease, and hypertension[4]. (R. 15). These two findings satisfy steps one and two of the inquiry. The ALJ satisfied step three by concluding that

---

[3]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html.

[4]The ALJ also evaluated Plaintiff's obesity pursuant to the Commissioner's policies, although Plaintiff did not allege limitations from it. The ALJ found it to be non-severe. (R. 15-16).

7

Plaintiff's impairments or a combination of impairments do in fact meet or medically equal a listed impairment. (R. 16).

The ALJ then found that Plaintiff's RFC limited her to light work, and that she was precluded from overhead reaching, exposure to extreme cold, concentrated exposure to vibration, unprotected heights, and hazards of moving machinery. (*Id.*). The ALJ also determined she needs an option to both sit and stand during work (*id.*), and that her medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not credible where they are inconsistent with her RFC. (R. 17).

The ALJ discussed Plaintiff's history of carpal tunnel syndrome, but did not find her "testimony regarding hand tingling, burning, and weakness fully credible to the extent she alleges an inability to perform" within her RFC. (R. 17). The ALJ further concluded that Plaintiff's limitations could be accommodated by limiting her to light work activity. (*Id.*). Allegations of pain involving Plaintiff's back, shoulder, elbows, and hip were also deemed by the ALJ not to be fully supported by the medical evidence of record. (R. 18). The ALJ accounted for Plaintiff's hypertension in her RFC and pointed out that she did not greatly stress that it prevented her from working. (*Id.*). Finally, the ALJ addressed opinion evidence and gave little weight to the non-medical disability examiner who completed the physical assessment, and also assigned little weight to the opinion by Plaintiff's treating neurologist who opined she could not work on a permanent basis. (R. 18-19).

Step four was then satisfied when the ALJ applied Plaintiff's RFC and found her unable to perform past relevant work. (R. 19). Lastly, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff is able to perform based on her age, education, work

experience, and RFC, satisfying step five and completing the inquiry. (*Id.*). Based upon this analysis, the ALJ found Plaintiff not disabled. (R. 20).

### III.   Plaintiff's Argument for Reversal

Plaintiff makes two specific allegations of reversible error in her claim: (1) the ALJ failed to accord proper weight to the opinion of her treating physician, Dr. John Brockington; and (2) the ALJ failed to fully and fairly develop the record. (Pl.'s Mem. 7, 10).

### IV.   Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). It is something "more than a mere scintilla." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

V.     Discussion

The two issues alleged by Plaintiff are whether the ALJ accorded proper weight to the opinion of her treating physician, Dr. Brockington, and whether the ALJ fully and fairly developed the record. (Pl.'s Mem. 7, 10). In both instances, substantial evidence supports the ALJ's decisions.

a.     **The ALJ Accorded Proper Weight to the Opinion of Dr. John Brockington**

Plaintiff argues that the ALJ accorded insufficient weight to the opinion of her treating neurologist, Dr. Brockington, was reversible error. (Pl.'s Mem. 7). However, substantial evidence supports the ALJ's decision to grant little weight to the Dr.'s decision.

The Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)). Social Security regulations provide a similar preference:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from other reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 1527(c). The Commissioner "must specify what weight is given to a treating physician's opinion." *MacGregor*, 786 F.2d at 1053. Good cause has been found when "the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding." *Lewis*, 125 F.3d at 1440 (quoting *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfaz v. Bowen*, 825 F.2d 278, 280-81 (11th Cir. 1987)). The Eleventh Circuit has also found good cause when "the doctors'

opinions were conclusory or inconsistent with their own medical records." *Lewis*, 125 F.3d at 1440 (quoting *Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)).

However, the Commissioner's regulations conspicuously provide that medical source opinions on some issues are reserved to the Commissioner. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 1527(d)(1). A Social Security Administration policy interpretation clarifies that because statements that an individual is disabled are "administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance." SSR 96-5p[5]; *see also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). The Commissioner will consider all statements made by treating physicians, but "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). A treating physician's conclusory statement that a claimant is "totally disabled" should be explained by his medical findings. *Bell*, 796 F.2d at 1354.

Substantial evidence supports the ALJ's decision in the instant case to attribute little weight to Dr. Brockington's opinion evidence. Plaintiff focuses on the ALJ's statement that while "the physician indicated that [Plaintiff] is disabled, it is not clear that the physician was familiar with the definition of 'disability'" in the Act and regulations. (R. 19). "Specifically, it is possible that the doctor was referring solely to an inability to perform [Plaintiff]'s past work, which is actually

---

[5]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html.

consistent with the conclusions reached in this decision." (*Id.*). Plaintiff contends that if the ALJ "believed there was some discrepancy or misunderstanding" on the physician's behalf, "it was incumbent upon the ALJ to recontact Dr. Brockington for clarification." (Pl.'s Mem. 9).

To support her argument, Plaintiff cites to SSR 96-5p and 20 C.F.R. §§ 404.1512(e), 416.912(e)[6], which require the ALJ to recontact a treating source "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record." SSR 96-5p. The active regulations at the time of the ALJ's decision provided that the ALJ should recontact a treating physician when the evidence from that physician is inadequate to make a disability determination. *See* 20 §§ 404.1512(e), 416.912(e) (2010).

The record evidence regarding Dr. Brockington was not incomplete; in fact, the evidence considered by the ALJ was quite thorough and was the only medical evidence of record for 2002 and 2003 (and even went into early 2005). (R. 164-74, 202). Dr. Brockington stated in June 2003, that Plaintiff's arthritis, carpal tunnel syndrome and cervicothoracic radiculopathy were the basis for his opinion that he did "not think that she will be able to work." (R. 167). Plaintiff also points out that almost a year earlier in August 2002, Dr. Brockington opined, "I think that there is very little chance that she will be able to perform any kind of work with her arms or hands. . . . I think that she will need to be off work on a permanent basis because of this." (R. 172). However, as Defendant notes, Plaintiff presented no evidence that Dr. Brockington was familiar with the regulatory definition of

---

[6]Title 20, C.F.R., §§ 404.1512(e) and 416.912(e) were removed from the regulations *after* both parties filed their briefs in this matter. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,655-56 (February 23, 2012) (to be codified at 20 C.F.R. pt. 404 and 416).

disability since the Dr. does not articulate any functional limitations and is not a vocational expert. (Def.'s Mem. 9 n. 4, 10).

Additionally, Plaintiff's medical records indicated improvement by 2005. (R. 202, 177-78). Indeed, in 2006 her treating physician, Dr. James, indicated that he thought Plaintiff was capable of working–if not at the Postal Service, then perhaps at a new job. (R. 176). Plaintiff's records from Dr. Chatham in 2006 also indicated improvement, and he found that she had a normal range of motion in her neck, head, shoulders, elbows and wrists, and stated that her arthritis was stable. (R. 183).

The medical records of evidence from Drs. Chatham and James, which were created after Plaintiff's alleged onset of disability date, also supply substantial evidence for the ALJ to give little weight to Dr. Brockington's contrary opinion of disability. Dr. Brockington's own records provide enough evidence for the ALJ to ascertain the basis of his opinion, and the ALJ simply did not violate SSR 96-5p. Therefore, the ALJ had no obligation to recontact Dr. Brockington and properly discounted the opinion that was reserved by regulation to the Commissioner.

  **b.  The ALJ Fully and Fairly Developed the Record**

Plaintiff contends that by dismissing Dr. Brockington's opinion on her ability to work, the ALJ "essentially inserted himself as medical expert," thereby disregarding evidence contrary to the ALJ's decision, and thus did not fully and fairly develop the record. (Pl.'s Mem. 10-13). Substantial evidence supports the ALJ's decision not to give much weight to Dr. Brockington's opinion, as discussed *supra*, and therefore the ALJ did not essentially insert himself as a medical or a vocational expert.  The court has explained why there was no obligation to recontact Dr. Brockington, and addresses the remaining positions of Plaintiff's arguments below.

An ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). "Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11. Therefore, the ALJ has a basic obligation to develop a full and fair record. *See Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981); *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986); *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, a claimant has the duty to develop the record where appropriate, such as (and at a minimum) establishing the existence of a disability. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The Eleventh Circuit has explained that the ALJ is not required to seek additional evidence so long as the record contains sufficient evidence allowing him to make an informed decision. *See e.g., Id.*; *see also Doughty*, 245 F.3d at 1281.

Here, Plaintiff "was represented by counsel at the hearing, who was in a position to gather and present evidence in support of" Plaintiff. *Allen v. Schweiker*, 642 F.2d 799, 802 (5th Cir. 1981). As discussed above, the ALJ was under no obligation to recontact Dr. Brockington for a further inquiry into his opinion. There was abundant evidence in the record allowing the ALJ to make an informed decision. (R. 176-78, 183-87, 217-20, 237-52); *see Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding that additional expert medical testimony was not necessary when the record included the opinions of several physicians, including the plaintiff's treating physician). Plaintiff's argument turns on the ALJ giving Dr. Brockington's opinion little weight, but, for the reasons discussed above, that argument is without merit. Substantial evidence supports the ALJ's findings, and the ALJ developed a full and fair record and applied correct legal standards.

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___4th___ day of September, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE